# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ARCADYAN TECHNOLOGY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PLUME DESIGN, INC., et al.,<br><br>Defendants. | Case No. 18-cv-03807-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>[Re: ECF 31] |

Before the Court is Defendants Plume Design, Inc. ("Plume"), Liem H.D. Vo, Fahri Diner, and Murat Kocamen's[1] motion to dismiss certain claims in Plaintiff Arcadyan Technology Corporation's ("Arcadyan") complaint. ECF 31. The Court held a hearing on the motion on February 21, 2019. At the hearing, the Court granted in part and denied in part Defendants' motion with leave to amend. For the reasons stated on the record and as set forth below, the motion to dismiss is DENIED IN PART AND GRANTED IN PART WITH LEAVE TO AMEND.

## I. BACKGROUND[2]

Arcadyan manufacturers computing and networking equipment, and Plume markets and sells networking equipment and related services. Compl. ¶¶ 10–11, ECF 17. In February 2016, Arcadyan and Plume signed a master purchase agreement ("MPA"), setting forth the terms by which Arcadyan would manufacture certain products for Plume. *Id.* ¶ 15. Defendant Diner, Plume's Chief Executive Officer, signed the MPA on behalf of Plume. *Id.* ¶¶ 2, 12, 15. Section

---

[1] The Complaint spells Defendant Kocamen's name as "Kocaman," while Defendants spell it "Kocamen." The Court uses the spelling provided by Defendants.
[2] Arcadyan's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

4.1 of the MPA governed how Plume could order manufactured products from Arcadyan:

> Plume shall provide Purchase Orders to Arcadyan in writing or by electronic means, and such Purchase Order shall reference the Order quantity, the Product(s), applicable price, delivery destination, shipping instructions, carrier and requested shipment dates. All Orders or releases for Products placed by Plume hereunder shall be governed by the terms and conditions of this Agreement."

*Id.* ¶ 16. Plume was to pay for these goods "within 45 days net invoice date for shipments in the first six months," and within 60 days thereafter. *Id.* ¶ 17 (quoting MPA Section 6.7). Under Section 4.3 of the MPA, Plume was to provide Arcadyan with "6-month rolling forecasts of its required quantities of products," which Plume was to update on a monthly basis. *Id.* ¶ 18.

Given that these forecasts might not always be precise, the MPA also included provisions governing excess materials. Section 4.5 of the MPA allowed Arcadyan to invoice Plume for carrying excess materials. *Id.* ¶ 19. Section 4.6 states that "[i]n the event that the Excess Materials on hand exceed 180 days, Arcadyan may request that Plume purchase such Excess Materials and invoice Plume for all such Excess Materials at Arcadyan's purchase price." *Id.*

In early 2017, Plume submitted forecasts to Arcadyan of the quantities of products it would need from January through August 2017. *Id.* ¶ 21. However, Plume did not end up ordering the number of products forecasted, such that Arcadyan was left carrying substantial excess materials. *Id.* ¶ 21. Throughout this time, Plume also failed to make payments on delivered products within 45 days of each invoice, as required by Section 6.7. *Id.* ¶¶ 20, 22. Arcadyan warned Plume in April 2017 that it would shut down its production lines if Plume did not pay the overdue invoices. *Id.* ¶ 23. Though Plume, through its employee Defendant Vo, promised to pay down these invoices by May 2017, it did not finish paying down the invoices until September 22, 2017. *Id.*

On September 7, 2017, Plume attempted to order additional products from Arcadyan via Purchase Order #170 ("PO170"). Because Plume had not yet paid down the outstanding invoices and because the PO170 products would not consume all of the excess materials Arcadyan was carrying, Arcadyan asked Plume to agree to issue purchase orders for the outstanding materials before it began fulfilling PO170, and Plume agreed. *Id.* ¶¶ 24–25. Over the next several months, Plume issued purchase orders for various components held by Arcadyan and expenses incurred by

1 Arcadyan. *Id.* ¶¶ 26, 28, 30, 31, 33, 34, 36. To date, Plume has not fully paid for several of these purchase orders.

By November 17, 2017, Arcadyan had not yet begun fulfilling PO170 because Plume had not yet purchased all of the excess materials. *Id.* ¶ 32. Plume promised to pay for all of these materials, so Arcadyan continued manufacturing products for PO170. *Id.* In December 2017, Arcadyan had almost completed the products for PO170, but Plume had not yet finished ordering the excess materials or paying for invoices on previously ordered materials. *Id.* ¶ 35. Defendant Vo promised that Plume would finish issuing purchase orders on the excess materials by December 29, 2017, but Plume did not issue such orders. *Id.* ¶ 35. Vo also promised Plume would pay for the outstanding purchase orders, but Plume did not comply with this promise. *Id.* ¶¶ 35, 39. To date, Plume has not paid at least $624,756.38 due to Arcadyan for issued purchase orders. *Id.* ¶ 40.

Arcadyan alleges that Plume never intended to pay for these purchase orders. In February 2018, Defendant Kocamen, Plume's Chief Financial Officer, told Arcadyan that Plume issued the purchase orders "under duress" in order to induce Arcadyan to fulfill PO170. *Id.* ¶¶ 4, 13, 41. Plaintiff alleges these actions, and Vo's representations, were authorized or directed by Defendants Kocamen and Diner, Plume's CEO. *Id.* ¶ 42.

As a result of these actions, Arcadyan brought the instant Complaint on June 26, 2018. ECF 1. In its Complaint, Arcadyan alleges the following unlawful acts: (1) breach of contract (Plume only); (2) conversion (all Defendants); (3) intentional misrepresentation (all Defendants); (4) negligent misrepresentation (all Defendants); and (5) false promise (all Defendants).

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the

3

Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### III. DISCUSSION

Defendants argue that the Court should dismiss (1) the breach of contract claim; (2) all claims against Defendants Diner and Kocamen; and (3) the conversion claim. The Court agrees as to (1) and (2), but disagrees as to (3).

As to the breach of contract claim, the Court agrees with Defendants that Arcadyan has not alleged a valid theory of breach of contract in the Complaint. At the hearing on the motion, the parties clarified that the Complaint alleges that Plume has not paid for purchase orders only for excess materials, not for finished products. The Complaint currently alleges that Sections 4.5 and

4

4.6 of the MPA govern excess materials. Section 4.6 requires that "[i]n the event that the Excess Materials on hand exceed 180 days, Arcadyan may request that Plume purchase such Excess Materials and invoice Plume for all such Excess Materials at Arcadyan's purchase price." Compl. ¶ 19. But Arcadyan does not allege it had the materials on hand for more than 180 days. Though Arcadyan argues in its opposition that the contract allows Arcadyan to "invoice Plume for materials that would not be used within 180 days, not that Arcadyan had to hold materials for 180 days before invoicing Plume," Opp. at 8, ECF 37, the Complaint does not plausibly allege this theory, especially in light of the plain language of the contract. Similarly, to the extent Arcadyan alleges that Plume's failure to pay for the materials violated Section 4.1 of the MPA, as opposed to Section 4.6, *see id.* at 7–8, this theory is also not plausibly alleged. For these reasons, Defendants' motion to dismiss Arcadyan's breach of contract claim is GRANTED WITH LEAVE TO AMEND.

The Court likewise agrees with Defendants that Arcadyan has not stated a claim against either Defendant Diner or Defendant Kocamen. As to Diner, the only relevant, non-conclusory allegation is that Diner signed the MPA. Compl. ¶ 15. As to Kocamen, the only relevant, non-conclusory allegation is that Kocamen emailed Arcadyan *after* Plume issued the purchase orders to tell Arcadyan that the orders were issued "under duress." *Id.* ¶¶ 4, 13, 41. These allegations do not satisfy the *Twombly*/*Iqbal* plausibility requirements. Allegations that defendants "authorized" or "condoned" certain activity are not sufficient to state a valid claim. *See Iqbal*, 556 U.S. at 681. As to the specific allegations, the fact that Diner signed the MPA says nothing about his future involvement in allegedly breaching that agreement or misrepresenting to Arcadyan that Plume would meet its outstanding obligations. For much the same reason, Defendant Kocamen's *ex post* representation that Plume issued the purchase orders under duress does not allow the Court to infer that Kocamen was involved in the issuance of those orders at the relevant time. For these reasons, Defendants' motion to dismiss Arcadyan's claims against Defendants Diner and Kocamen is GRANTED WITH LEAVE TO AMEND.

Finally, Arcadyan's conversion claim, while unusual in this context, is sufficiently alleged. "Conversion is the wrongful exercise of dominion over the property of another. The elements of a

conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 45, *as modified on denial of reh'g* (May 21, 2010). Arcadyan alleges that Plume accepted the goods without paying for the attendant invoices. Defendants do not challenge the fraud claims against Plume or Defendant Vo, such that the allegation that Defendant Vo "induced" Arcadyan to send the PO170 goods knowing that Plume would not timely pay for them remains unchallenged. Compl. ¶¶ 35, 41. This satisfies the element that defendant's conversion was allegedly procured by a wrongful act, namely fraudulent inducement. *See Elliott v. Federated Fruit & Vegetable Growers*, 108 Cal. App. 412, 417 (1930) ("The jury having found that the contract was procured by fraud, the grapes having been delivered to the appellant under the contract so procured, the taking . . . was therefore a conversion."). Finally, Arcadyan alleges it has suffered damages of at least $624,756.38. Compl. ¶ 40. For these reasons, Defendants' motion to dismiss Arcadyan's conversion claim is DENIED.

## IV. ORDER

For the foregoing reasons, as well as those stated on the record at the hearing on the motion, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. An amended complaint shall be filed no later than **March 28, 2019**.

**IT IS SO ORDERED.**

Dated: February 26, 2019

_____
BETH LABSON FREEMAN
United States District Judge